1
2
3
4               UNITED STATES DISTRICT COURT
5            NORTHERN DISTRICT OF CALIFORNIA
6

| | |
|---|---|
| MATTHEW LEBOEUF, | Case No.  19-cv-02543-SVK |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION** |
| NVIDIA CORPORATION, | Re: Dkt. No. 27 |
| Defendant. | |

## I.    INTRODUCTION

Plaintiffs Matthew LeBoeuf and Robert Haney (collectively, "Plaintiffs") bring this putative class action against Defendant NVIDIA Corporation ("Defendant") on behalf of themselves and others similarly situated.  Dkt. 19 ("FAC") ¶ 1.  NVIDIA moves to compel arbitration pursuant to an agreement that is signed by Plaintiffs and covered by the Federal Arbitration Act ("FAA").  Dkt. 27 ("Motion") ¶ 1.  Plaintiffs filed an opposition to Defendant's motion.  Dkt. 32 ("Opp.") at 4.  The parties have consented to the jurisdiction of a magistrate judge (Dkts. 15, 18), and the Court held a hearing in this matter on October 29, 2019.  Based on the arguments at the hearing, the Parties' submissions, and the relevant law, the Court finds that NVIDIA has met its burden of demonstrating that arbitration is warranted.  Accordingly, the Court **GRANTS** Defendant's motion to compel arbitration and **DISMISSES** this matter for the reasons discussed below.

## II.    BACKGROUND

The relevant facts are undisputed.

### A.  NVIDIA's Graphics Cards

Defendant is a corporation headquartered in California and incorporated in Delaware.

FAC ¶ 29.  Defendant is in the business of developing graphics processing units ("GPUs").  Dkt 27-1 ("Sinnathamby Decl.") ¶ 2; Motion at 2.  Defendant's "newest and most-advanced" graphics cards are part of its GeForce RTX20 series and include the RTX 2060, RTX 2070, RTX 2080, and RTX 2080 Ti.  Sinnathamby Decl. ¶ 2.  All GeForce graphics cards that are installed in a Windows PC require a corresponding GeForce Windows driver in order to function properly. *Id*. ¶ 3.  Once installed, the driver communicates between the Windows PC and the graphics card. *Id*.  These drivers can be downloaded from Defendant's website.  *Id.*

There are two ways in which a user may download the driver.  *Id*. ¶ 4.  One way is for the user to select "GEFORCE DRIVERS" from the Defendant's website.  *Id*. ¶ 5.  This directs the user to a webpage where the user may search and select the necessary GeForce driver.  *Id*.  Once the user selects a GeForce driver, the user is directed to Defendant's "Driver Download" webpage, which presents the user with information about the driver and a green icon that states "DOWNLOAD."  *Id*. ¶ 6.  Immediately below the download button, there is a statement that reads: "This download includes the NVIDIA display driver and GeForce Experience application. Details for use of this NVIDIA software can be found in the <u>NVIDIA End User License Agreement.</u>"  *Id*.  The phrase "NVIDIA End User License Agreement" contains a link to the current NVIDIA End User License Agreement.  *Id*.  If the user clicks "DOWNLOAD," the aforementioned file is downloaded to the user's computer.  *Id*. ¶ 7.

The second way to download the driver is to select "ALL NVIDIA DRIVERS."  *Id*. ¶ 9. The user is directed to Defendant's "Driver Downloads" page, which allows the user to manually search for and download the requisite driver by inputting information about the product type, series, operating system, driver type, download type, and language.  *Id*.  After inputting the necessary information, the user is lead to a webpage which presents the user with information about the driver and a green icon labelled "DOWNLOAD."  *Id*. ¶ 10.  If the user selects "DOWNLOAD," the user is taken to the download page.  *Id*. ¶ 11.  This page contains the statement "[t]his download includes the NVIDIA display driver and GeForce Experience application. Details for use of this NVIDIA software can be found in the **NVIDIA End User License Agreement**" immediately above a green "DOWNLOAD" button.  *Id*.  The phrase

1   "NVIDIA End User License Agreement" contains a link to the current NVIDIA End User License

2   Agreement.  *Id*.  If the user clicks "DOWNLOAD," the driver file is downloaded to the user's

3   computer.  *Id*. ¶ 12.

4        Once the file is saved to the user's computer, the user is presented with the NVIDIA

5   Installer.  *Id*. ¶ 7.  The first screen of the Installer, "System Check," runs a system check for

6   compatibility.  *Id*.  The second screen of the Installer, "License Agreement," gives the user the

7   option to select either the Driver or the Driver and the GeForce Experience.  *Id*.  On the lower left-

8   hand corner of the screen, there is a statement that reads "[b]y installing you agree to the

9   following: <u>End User License Agreement</u>."  *Id*.  The phrase "End User License Agreement"

10  contains a link to the current NVIDIA End User License Agreement.  *Id*.  The user is also

11  presented with two icons: "AGREE AND CONTINUE" AND "CANCEL."  *Id*.  By clicking

12  "AGREE AND CONTINUE," the user is able to install the software.  *Id*. ¶ 8.

13            **B.  NVIDIA End User License Agreement**

14       The relevant sections of NVIDIA's End User License Agreement ("License

15  Agreement") are excerpted below:

16       IMPORTANT NOTICE -- READ CAREFULLY: This License For Customer Use
         of NVIDIA GeForce Software ("LICENSE") is the agreement which governs use of
17       the GeForce software of NVIDIA Corporation and its subsidiaries ("NVIDIA")
         downloadable here from, including computer software and associated materials
18       ("SOFTWARE"). By downloading, installing, copying, or otherwise using the
         SOFTWARE, you agree to be bound by the terms of this LICENSE. If you do not
19       agree to the terms of this LICENSE, do not download the SOFTWARE.

20  Dkt. 27-2 ("License Agreement") at 1.

21       **RECITALS**

22       Use of NVIDIA's products requires three elements: the SOFTWARE, the hardware
         on a graphics controller board, and a personal computer. The SOFTWARE is
23       protected by copyright laws and international copyright treaties, as well as other
         intellectual property laws and treaties. The SOFTWARE is not sold, and instead is
24       only licensed for use, strictly in accordance with this LICENSE. The hardware is
         protected by various patents, and is sold, but this LICENSE does not cover that sale.
25       This LICENSE sets forth the terms and conditions of the SOFTWARE use only.

26  *Id.*

27  ////

28  ////

*United States District Court*
*Northern District of California*

3

**APPLICABLE LAW AND BINDING ARBITRATION**

Governing Law. This LICENSE shall be deemed to have been made in, and shall be construed pursuant to, the laws of the State of Delaware, without regard to or application of its conflict of laws rules or principles. . . .

Arbitration.  For any claim against or dispute or controversy with NVIDIA relating to this LICENSE or that may arise from it or out of use of the SOFTWARE (collectively, "Disputes") . . . Customer and NVIDIA each agree to resolve any such Dispute (excluding any NVIDIA claims for injunctive or other equitable relief) by binding arbitration before an arbitrator from Judicial Mediation and Arbitration Services ("JAMS") located in Santa Clara County, California under the Optional Expedited Arbitration Procedures then in effect for JAMS, except as provided herein. . . .

Class Action & Jury Trial Waiver. ALL CLAIMS MUST BE BROUGHT IN THE PARTIES' INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING. THIS WAIVER APPLIES TO CLASS ARBITRATION UNLESS SUCH ARBITRATION IS NECESSARY TO EFFECTUATE THE ENFORCEMENT OF THE COURT CLASS ACTION WAIVER OR IN THE EVENT THAT CLASS ARBITRATION IS EXPRESSLY AGREED TO BY NVIDIA. CUSTOMER AGREES THAT, BY ENTERING INTO THIS LICENSE, CUSTOMER AND NVIDIA ARE EACH WAIVING THE RIGHT TO A TRIAL BY JURY OR TO PARTICIPATE IN A CLASS ACTION.

*Id*. at 2.

Right to Opt Out. CUSTOMER MAY OPT OUT OF THE FOREGOING ARBITRATION AND CLASS ACTION/JURY TRIAL WAIVER PROVISION OF THIS LICENSE BY NOTIFYING NVIDIA IN WRITING WITHIN 30 DAYS OF COMMENCEMENT OF USE OF THE SOFTWARE UNDER THIS LICENSE. SUCH WRITTEN NOTIFICATION MUST BE SENT TO ATTN: LEGAL, 2788 SAN TOMAS EXPRESSWAY, SANTA CLARA, CALIFORNIA, 95051 AND MUST INCLUDE (1) CUSTOMER'S NAME, (2) CUSTOMER'S ADDRESS, (3) THE REFERENCE TO GEFORCE SOFTWARE AS THE SOFTWARE THE NOTICE RELATES TO, AND (4) A CLEAR STATEMENT INDICATING THAT CUSTOMER DOES NOT WISH TO RESOLVE DISPUTES THROUGH ARBITRATION AND DEMONSTRATING COMPLIANCE WITH THE 30 DAY TIME LIMIT TO OPT OUT.

*Id*. at 3.

### C.  Plaintiffs' Experiences

Plaintiff Haney is a citizen of Nevada.  Dkt. 32-2 ("Haney Decl.") ¶ 1.  Haney purchased the NVIDIA RTX 2060 graphics card from newegg.com.  *Id.* ¶ 10.  He installed the graphics card and downloaded the requisite driver from Defendant's website.  *Id.* ¶¶ 5, 12.  Though he recalls seeing terms and conditions that dealt with software, he does not recall seeing any terms and conditions that related to the hardware he had purchased.  *Id.* ¶ 5.  After installing the graphics

card, Haney experienced a decrease in performance in comparison to his previous NVIDIA graphics card.  FAC ¶¶ 25, 26.  On April 8, 2019, Haney contacted Defendant's customer service representatives and advised them of the problems he was having.  Haney Decl. ¶ 6; Dkt. 27-4 ("Haney Email Correspondence") at 16.  On April 10, Haney advised the customer service representative that EVGA was the manufacturer of the card.  Haney Email Correspondence at 15.  Also on April 10, the customer service representative advised Haney to "contact EVGA or place of purchase to check for a replacement."  *Id*.  After a series of emails back and forth, the customer service representative again advised Haney that "[a]s this is an EVGA manufactured card, you may check with them for refurbish/warranty related queries."  *Id*. at 9.  On April 24, Haney confirmed to the customer service representative that he "download[ed] the drivers directly from nvidia and then perform[ed] a clean installation each time."  *Id*. at 4.  On April 26, Haney told the customer service representative "I think I'm sending this card back to EVGA. They are going to send me a new one."  *Id*. at 3.  The customer service representative advised Haney to contact him after he received the replacement card from EVGA.  *Id*. at 2.

Plaintiff LeBoeuf is a citizen of Texas.  Dkt. 32-1 (LeBoeuf Decl.) ¶ 1.  LeBoeuf purchased the NVIDIA RTX 2080 graphics card from a Best Buy in Texas.  *Id*. ¶ 8; FAC ¶ 10.  He installed the graphics card and installed the driver.  LeBoeuf Decl. ¶¶ 6, 10.  He "may have previously reviewed" the License Agreement when he installed the driver," did not select, read, sign, or accept a contract with Defendant.  *Id*. ¶¶ 3, 6.  He does recall that all of the materials he saw during installation were software-related, and though he knew he "was agreeing to some terms and conditions[,] it was clear to [him] that [the terms and conditions] only dealt with the software."  *Id*. ¶ 6.  After installing the graphics card, LeBoeuf experienced various issues and found that "[t]he graphics card simply never met the promised benchmarks."  *Id*. ¶ 5; FAC ¶¶ 15, 17.  LeBoeuf contacted one of Defendant's customer service representatives through Defendant's online chat system and directed the customer service representative to his post on Defendant's "GeForce Graphics Cards" forum.  Dkt. 27-5 ("LeBoeuf Chat") at 2; Dkt. 27-7 ("LeBoeuf Post") at 2.  LeBoeuf terminated the chat with the customer service representative before the issue was resolved.  LeBoeuf Post at 3.

1    Based on the purported issues with Defendant's graphics cards, Plaintiffs filed this putative

2    class action against Defendant and asserted eight claims: (1) California Business & Professions

3    Code § 17200; (2) California Civil Code § 1750; (3) breach of express warranty; (4) 15 U.S.C. §

4    2301; (5) breach of implied warranty of merchantability; (6) breach of express warranty under the

5    Song-Beverly Warranty Act; (7) breach of implied warranty under the Song-Beverly Warranty

6    Act; and (8) common law unjust enrichment.  FAC ¶ ¶ 68-139.

7    **III.    LEGAL STANDARD**

8    The FAA provides that an agreement to submit commercial disputes to arbitration shall be

9    "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the

10   revocation of any contract."  9 U.S.C. § 2; *see also AT&T Mobility LLC v. Concepcion*, 563 U.S.

11   333,  336 (2011).  "A party to a valid arbitration agreement may 'petition any United States

12   district court for an order directing that such arbitration proceed in the manner provided for in such

13   agreement.'"  *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004)

14   (quoting 9 U.S.C.§ 4).  Courts have developed a "liberal federal policy favoring arbitration

15   agreements."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co.*, 460 U.S. 1, 24–25 (1983).

16   Under this presumption in favor of arbitration, a court should not deny an order to arbitrate "unless

17   it may be said with positive assurance that the arbitration clause is not susceptible of an

18   interpretation that covers the asserted dispute."  *AT&T Techs.*, *Inc. v. Commc'ns Workers of Am.*,

19   475 U.S. 643, 650 (1986).  Thus, a district court's role under the FAA is limited to determining

20   two "gateway" issues: (1) whether an arbitration agreement exists; and (2) whether the agreement

21   encompasses the dispute at issue.  *See Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126,

22   1130 (9th Cir. 2000).  If the party seeking arbitration establishes these two factors, the Court must

23   compel arbitration.  9 U.S.C. § 4; *see Chiron*, 207 F.3d at 1130.

24   Further, "parties may agree to have an arbitrator decide not only the merits of a particular

25   dispute but also "'gateway' questions of 'arbitrability,' such as whether the parties have agreed to

26   arbitrate or whether their agreement covers a particular controversy."  *Henry Schein, Inc. v. Archer*

27   *and White Sales, Inc.,* 139 S.Ct. 524, 529 (2019) (citing *Rent–A–Center, West, Inc. v. Jackson*, 561

28   U.S. 63, 68-69 (2010) (internal citation omitted)).  "[P]arties may delegate threshold arbitrability

United States District Court
Northern District of California

questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." *Henry Schein,* 139 S.Ct at 530 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).  "When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract."  *Henry Schein*, 139 S.Ct. at 528.  However, a court may still decline to enforce the clause if the delegation itself is unconscionable or otherwise unenforceable under the FAA.  *See Brennan v. Opus Bank*, 796 F.3d 1125, 1132 (9th Cir. 2016); *see also Rent–A–Center,* 561 U.S. at 74.

## IV.    SUMMARY OF ARGUMENTS PRESENTED

In its motion, Defendant advances three arguments: (1) Plaintiffs' claims should be arbitrated because Plaintiffs agreed to do so when they clicked "AGREE AND CONTINUE" during the driver installation process; (2) Delaware law applies, and under Delaware law, the arbitrator, not the Court, must decide the threshold questions of arbitrability; and (3) even if the Court was tasked with deciding the threshold questions of arbitrability, Plaintiffs' claims would be subject to arbitration.  Motion at 1.

Plaintiffs oppose the motion, arguing: (1) there is no arbitration agreement because the License Agreement does not cover graphics cards; (2) California law controls, and under California law, the Court, not the arbitrator, must decide the threshold questions of arbitrability; (3) Plaintiffs' claims arise out of the graphics cards, not the drivers, and therefore are not within the scope of the License Agreement; and (4) the License Agreement is a contract of adhesion and is both procedurally and substantively unconscionable.  Opp. at 12.

In addition to these arguments, Defendant objects to portions of the Plaintiffs' declarations that it considers to be non-expert conclusory opinions.  Reply at 2, n. 1 (citing Haney Decl. ¶ 8, LeBoeuf Decl. ¶ ¶ 5, 7).  Defendant further objects to the "third-party" articles referenced by Plaintiffs on pages 5-7 of their Opposition as hearsay and hearsay within hearsay.  Reply at 2 (citing Opp. at 5-7).  First, the Court cautions Defendant that substantive arguments should not be made in footnote text.  Second, as the Court does not rely upon the objectionable portions the declarations or the Opposition in its analysis, the objections are **DENIED** as moot.

////

## V.    DISCUSSION

### A.  There Is a Valid Arbitration Agreement

Defendant argues that the License Agreement contains a valid arbitration clause to which both Plaintiffs assented when they clicked "DOWNLOAD" and "AGREE AND CONTINUE." Motion at 11.  Plaintiffs, in contrast, argue that they did not assent to arbitration because the License Agreement expressly excludes hardware.  Opp. at 19.

This Court agrees with Defendant.  As Defendant notes, it is undisputed that both Plaintiffs downloaded and installed drivers for their graphics cards.  Motion at 11 (citing FAC ¶¶ 16, 27; Haney Email Correspondence; LeBoeuf Chat; LeBoeuf Post).  Plaintiffs had to click "DOWNLOAD" if they wanted to download the necessary drivers from Defendant's website.  Sinnathamby Decl. ¶¶ 7, 12.  Plaintiffs also had to click "AGREE AND CONTINUE" to install the drivers onto their computers.  *Id*. ¶ 8.  During both of these actions, Plaintiffs were presented with the License Agreement and had the opportunity to review the Agreement by clicking on the link.  *Id*. ¶¶ 6, 11.  The Court is satisfied that this unrefuted evidence demonstrates that Plaintiffs assented to the License Agreement.

Plaintiffs' argument that the License Agreement expressly excludes disputes involving hardware and therefore Plaintiffs did not assent to arbitrate disputes arising out of the graphics cards is not persuasive.[1]  Opp. at 19.  Specifically, Plaintiffs cite the following language in the preamble of the License Agreement:

> The hardware is protected by various patents, and is sold, but this LICENSE does not cover that sale.  This LICENSE sets forth the terms and conditions of the SOFTWARE use only.

License Agreement at 1.  Plaintiffs argue that according to this language, the License Agreement does not apply to the sale of graphics cards.  Opp. at 19.  Plaintiff is not incorrect in this straightforward reading.  However, the License Agreement does apply to disputes "that may arise from [the License] or out of use of the SOFTWARE" (License Agreement at 1), and Defendant

---

[1] Plaintiffs make this argument both as an attack on formation of an agreement to arbitrate and on the arbitrability of this particular dispute.  Opp. at 19.  Because this Court finds that arbitrability of the dispute is a properly a question for the arbitrator under the facts of this case (*see infra* Section V.C.), here it addresses the argument only as it relates to contract formation.

8

1  persuasively argues that Plaintiffs' claims necessarily arise from the use of the driver, which is

2  software, because the graphics cards cannot operate without the driver.  Motion at 14; Reply at 13-

3  15; Sinnathamby Decl. ¶ ¶ 14-22.  In other words, Defendant's position is that Plaintiffs' claims

4  arise "out of the use of the software" and Plaintiffs' assent to the License Agreement is an

5  agreement to arbitrate the dispute at hand.  Reply at 13-15.  The language in the Recitals section of

6  the License Agreement that distinguishes between the sale of hardware and the licensing of

7  software does not undermine Defendant's position that this dispute involves software and is

8  therefore covered by the terms of the License Agreement.

9       Accordingly, this Court finds that Plaintiffs assented to the terms of the License

10  Agreement when they clicked "DOWNLOAD" and "AGREE AND CONTINUE."

**B.  Where the FAA is Silent, Delaware Law Governs**

12       The next step in the Court's analysis is whether the Court or the arbitrator decides the

13  question of arbitrability.  *Henry Schein*, 139 S.Ct. at 529 (internal citation omitted).  More

14  specifically, the Parties dispute whether the License Agreement's incorporation by reference of the

15  JAMS rules is sufficient to delegate the issue of arbitrability to the arbitrator.  Motion at 12-13;

16  Opp. at 21-22; Reply at 6-8.  Before the Court can decide that issue, however, it must resolve a

17  threshold issue of whether the arbitration agreement is governed by the laws of California or

18  Delaware.

19       The License Agreement provides that "[t]his LICENSE shall be deemed to have been

20  made in, and shall be construed pursuant to, the laws of the State of Delaware, without regard to or

21  application of its conflict of laws rules or principles."  License Agreement at 2.  Plaintiffs argue

22  that California law governs this matter because: (1) Delaware does not have a substantial

23  relationship to the parties or the transaction; (2) there may be a conflict between California and

24  Delaware law; and (3) California has a greater material interest in the issue of delegation of the

25  arbitrability question.  Opp. at 13-18.  Defendant argues that all issues related to arbitrability are

26  "clearly and unmistakably" delegated to the arbitrator through the clause's reference to JAMS.

27  Motion at 12.

28       Federal courts sitting in diversity look to the law of the forum state when making choice-

United States District Court
Northern District of California

of-law determinations. *First Intercontinental Bank v. Ahn, 7*98 F.3d 1149, 1153 (9th Cir. 2015). As Plaintiffs brought suit in the Northern District of California, this Court turns to the guidance of the California Supreme Court. When determining the enforceability of a choice-of-law clause, the California Supreme Court has opined that "the proper approach . . . is for the court first to determine either: (1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law." *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 466 (Cal. 1992). "The party seeking to enforce the choice-of-law provision bears the burden to establish a sufficient relationship to the state whose law the parties chose." *Colaco v. Cavotec SA*, 25 Cal. App. 5th 1172, 1188 (Cal. Ct. App. 2018).

If either of these factors are met, "California courts will enforce a choice-of-law provision unless (1) the chosen state's law conflicts with a fundamental public policy of the state whose law otherwise would apply, and (2) the other state has a materially greater interest than the chosen state in the determination of the particular issue." *Id*. (citing *Nedlloyd*, 3 Cal. 4th at 466 (internal citation and quotations omitted)). The "party opposing the [choice-of-law] provision's enforcement bears the burden to establish a fundamental conflict in the states' laws and the nondesignated state's materially greater interest in the determination of the particular issue. *Colaco*, 25 Cal. App. 5th at 1188.

### 1. Defendants meet their burden under *Nedlloyd*

"A substantial relationship exists in a state where a party is domiciled, resides, or is incorporated." *Simulados Software, Ltd. v. Photon Infotech Private, Ltd.*, 40 F. Supp. 3d 1191, 1197 (N.D. Cal. 2014) (citing *Nedlloyd*, 3 Cal. 4th at 467; *Cardonet, Inc. v. IBM Corp.*, No. 06–cv–6637–RMW, 2007 WL 518909 (N.D. Cal. 2007) (where defendant was incorporated and headquartered in New York, there was substantial relationship with New York); *Hatfield v. Halifax PLC*, 564 F.3d 1177 (9th Cir. 2009) (where one party was a UK company, there was a substantial relationship between England and the parties); *Trust One v. Invest Am*., 134 Cal. App. 4th 1302 (2005) (where a company was incorporated and had its principal place of business in California, there was a substantial relationship with California)). "In situations where a company

United States District Court
Northern District of California

10

is incorporated and headquartered in two different states, either incorporation or principal place of business in a particular state has been deemed a substantial relationship." *Simulados,* 40 F. Supp. 3d at 1197-98 (citing *Hambrecht & Quist Venture Partners v. Am. Med. Internat., Inc*., 38 Cal. App. 4th 1532, 1546 (Cal. Ct. App. 1995) ("It does not matter that, although incorporated in the chosen state, a party may have its principal place of business in the forum state; that party's 'domicile' in the chosen state provides a sufficient relationship to support the choice-of-law provision."); *ABF Capital Corp. v. Grove Properties Co*., 126 Cal. App. 4th 204, 217 (Cal. Ct. App. 2005) (although the party was a Delaware corporation, it had its principal place of business in New York, giving it sufficient connection to New York)).

It is undisputed that Defendant is incorporated in Delaware.  FAC ¶ 29; Motion at 9; Opp. at 14.  Though Plaintiffs argue that Defendant's incorporation in Delaware is not sufficient to constitute a "substantial relationship" under *Nedlloyd*, this Court finds Plaintiffs' arguments unpersuasive in the face of the aforementioned cases.  Opp. at 14.  California courts have regularly determined that incorporation in a particular state is enough to constitute a "substantial relationship," and this Court finds no reason to find otherwise.  *See Hambrecht*, 38 Cal. App.4th at 1546.  Accordingly, the Court is satisfied that Defendant's incorporation in Delaware constitutes a "substantial relationship" as required by *Nedlloyd*.

### 2. Plaintiffs are unable to meet their burden under *Nedlloyd*

As Defendant has satisfied its burden under *Nedlloyd*, the burden shifts to Plaintiffs to show that (1) Delaware law "conflicts with a fundamental public policy" of California law; **and** (2) California "has a materially greater interest" in the determination of this issue than Delaware does.  *Colaco*, 25 Cal. App. 5th at 1188 (citing *Nedlloyd*, 3 Cal. 4th at 466) (emphasis added).

#### a. Fundamental Public Policy

Plaintiffs must first demonstrate that Delaware law conflicts with a fundamental public policy of California.  *Colaco,* 25 Cal. App. 5th at 1188 (citing *Nedlloyd*, 3 Cal. 4th at 466 (internal citation and quotations omitted)).  To meet this burden, Plaintiffs argue that under California law, reference to JAMS rules where one party is unsophisticated does not result in an enforceable delegation clause.  Opp. at 17.

1          "To determine the public policy of a state, 'the Constitution, laws, and judicial decisions of

2   that state, and as well the applicable principles of the common law, are to be considered.'" *Ahn*,

3   798 F.3d at 1156 (quoting *Twin City Pipe Line Co. v. Harding Glass Co*., 283 U.S. 353, 357

4   (1931)).  "No bright-line rules govern this analysis." *King v. Bumble Trading, Inc.*, 393 F. Supp.

5   3d 856, 866 (N.D. Cal. 2019) (citing *Century 21 Real Estate LLC v. All Prof'l Realty, Inc*., 889 F.

6   Supp. 2d 1198, 1216 (E.D. Cal. 2012); *Discover Bank v. Super. Ct*., 134 Cal. App. 4th 886, 893

7   (Cal. Ct. App. 2005) ("We are not aware of any bright-line rules for determining what is and what

8   is not contrary to a fundamental policy of California")).  "It is clear, however, that the policy must

9   be a 'substantial' one." *King*, 393 F. Supp. 3d at 866 (citing *Brack v. Omni Loan Co.*, 164 Cal.

10  App. 4th 1312, 1323 (Cal. Ct. App. 2008) (internal citation omitted)).  And, as the party opposing

11  enforcement of a choice-of-law provision, Plaintiffs "must point to a statute or judicial decision

12  that clearly states such a strong public policy." *Yei A. Sun v. Advanced China Healthcare, Inc*.,

13  901 F.3d 1081, 1090 (9th Cir. 2018).

14          Plaintiffs cite to decisions in this Circuit to support their argument that "where one party is

15  unsophisticated, courts have been equally clear in reaching the conclusion that reference to

16  arbitration rules by itself does not satisfy the 'clear and unmistakable' standard."  Opp. at 21-22

17  (citing *Eiess v. USAA Fed. Sav. Bank*, No. 19-cv-00108-EMC, 2019 U.S. Dist. LEXIS 144026, at

18  *23 (N.D. Cal. 2019), *Ingalls v. Spotify USA, Inc*., No. C 16-03533 WHA, 2016 U.S. Dist. LEXIS

19  157384, at *3 (N.D. Cal. 2016); *Aviles v. Quik Pick Express, LLC*, 2015 U.S. Dist. LEXIS 174960,

20  at *16-18 (C.D. Cal. 2015); *Meadows v. Dickey's Barbecue Restaurants Inc*., 144 F. Supp. 3d

21  1069, 1078 (N.D. Cal. 2015); *Tompkins v. 23andMe, Inc*., No. 5:13-CV-05682-LHK, 2014 U.S.

22  Dist. LEXIS 88068, at *11 (N.D. Cal. 2014)).  Additionally, though Plaintiffs acknowledge that

23  Delaware is silent on the enforceability of delegation by incorporation by reference against

24  unsophisticated parties and therefore there is no "clear conflict," they argue that a conflict of law

25  is likely.  Opp. at 17.  Plaintiffs further argue that California has demonstrated an interest in

26  protecting consumers by making broad references to the California Unfair Competition Law

27  ("UCL") and the California Consumers Legal Remedies Act ("CLRA").  *Id*. at 18.

28          In contrast, Defendant argues that there is no conflict between Delaware law and California

United States District Court
Northern District of California

1    public policy because: (1) California jurisprudence does not reflect a fundamental public policy as

2    required by *Nedlloyd*; and (2) California does not have a materially greater interest in this

3    litigation than Delaware does.  Reply at 4-6.  During oral argument, Defendant cited to *McClellen*

4    *v. Fitbit, Inc.,* No. 3:16-cv-00036-JD, 2017 WL 4551484, at *3 (N.D. Cal. 2017), to demonstrate

5    that California courts are unsettled on how the sophistication of a party affects incorporation by

6    reference.

7            The Court is not persuaded by Plaintiffs' arguments.  While some courts in this Circuit

8    have found that reference to arbitration rules is not sufficient to satisfy the clear and unmistakable

9    standard when an unsophisticated party is present, others have found that the sophistication of the

10   parties does not matter.  Reply at 8 (citing *Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 992

11   (N.D. Cal. 2017); *Gountoumas v. Giaran, Inc.*, No. CV 18-7720-JFW(PJWx),

12   2018 WL 6930761, at *6 (C.D. Cal. 2018)).  In *McClellen*, for example, a Court in this District

13   analyzed California law on this topic and concluded that "California courts enforce incorporated

14   contract terms against a party regardless of his or her sophistication."  *McClellen*, 2017 WL

15   4551484, at * 3.  This finding, in conjunction with similar findings of other Courts in this District,

16   undermines Plaintiffs' arguments that California has a *fundamental* public policy against

17   incorporation by reference when one party is unsophisticated.

18           Plaintiffs are further unable to show whether such a policy would be contravened by

19   application of Delaware law.  As these findings are required by *Nedlloyd* to overcome a choice-of-

20   law provision, the Court's analysis need not go further.  The Court finds that the Parties' choice-

21   of-law provision selecting Delaware law is enforceable.

22                           **b.   Materially Greater Interest**

23           Similarly, Defendants fail to demonstrate that California a materially greater interest in

24   determining the issue at hand.  To determine whether California has a materially greater interest

25   than Delaware, a court must analyze the following factors: "(1) the place of contracting; (2) the

26   place of negotiation of the contract; (3) the place of performance; (4) the location of the subject

27   matter of the contract; and, (5) the domicile, residence, nationality, place of incorporation, and

28   place of business of the parties."  *1–800–Got Junk? LLC v. Superior Court*, 189 Cal. App. 4th 500,

1  513, n. 10 (Cal. Ct. App. 2010) (citing Restatement § 188).

2    The relationship this case has to California is that Defendant is headquartered and has its

3  principal place of business here.  Opp. at 14; FAC ¶ 29.  Neither Plaintiff is a resident of

4  California.  Reply at 6 (citing FAC ¶¶ 8, 10, 20, 24).  Neither Plaintiff purchased their graphics

5  card in California.  *Id*.  In fact, the overwhelming majority of Plaintiffs' interactions with

6  Defendant took place over the internet.  *See* FAC ¶¶ 16; 27; Haney Email Correspondence;

7  LeBoeuf Chat.  The Court does not find that California has a "materially greater" interest than

8  Delaware, and because Plaintiffs are unable to meet their burden of overcoming the License

9  Agreement's choice-of law clause as required by *Nedlloyd*, the Court finds that Delaware law

10 applies to the instant motion.

11    **C.  Arbitrability Must Be Decided by the Arbitrator**

12    Having resolved the choice-of-law issue, the Court returns to the underlying question of

13 whether arbitrability is to be decided by the Court or the arbitrator.  "[W]here a contract clearly

14 delegates the issue of arbitrability to the arbitrator, the arbitration provision must be enforced."

15 *Johnson v. Oracle Am., Inc*., 764 Fed. Appx. 607, 608 (9th Cir. 2019) (citing *Mohamed v. Uber*

16 *Techs, Inc*., 848 F.3d 1201, 1209 (9th Cir. 2016)).  "Clear and unmistakable evidence of an

17 agreement to arbitrate arbitrability "might include . . . a course of conduct demonstrating assent . .

18 . or . . . an express agreement to do so."  *Mohamed*, 848 F.3d at 1208-09 (quoting *Momot v.*

19 *Mastro*, 652 F.3d 982, 988 (9th Cir. 2011) (internal citation omitted)).  "Language delegating to

20 the arbitrators the authority to determine the validity or application of any of the provisions of

21 the arbitration clause[ ] constitutes an agreement to arbitrate threshold issues concerning

22 the arbitration agreement."  *Mohamed*, 848 F.3d at 1209 (internal citation and quotation marks

23 omitted).

24    The Delaware Supreme Court has articulated a two-part test to determine whether an

25 agreement contains clear and unmistakable evidence that the parties agreed to submit the issue of

26 arbitrability to the arbitrator: (1) the arbitration provision must generally provide for arbitration of

27 all disputes; and (2) the provision must incorporate a set of arbitration rules that empower the

28 arbitrator to decide arbitrability.  *James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 76, 80

14

United States District Court
Northern District of California

(Del. 2006).  The presence of a "broad arbitration clause and [a] reference to the JAMS Rules clearly show that the parties intended to arbitrate issues of substantive arbitrability with respect to disputes that relate to the prior agreements."  *Li v. Standard Fiber, LLC*, No. 8191–VCN, 2013 WL 1286202, at *6 (Del. Ch. 2013).

The Court agrees with Defendant.  As to the first prong of the *Willie Gary* test, the License Agreement provides that "any claim against or dispute or controversy with NVIDIA relating to this LICENSE or that may arise from it or out of use of the SOFTWARE" shall be resolved by binding arbitration.  License Agreement at 2.  This broad language "generally provides for arbitration of all disputes," and Delaware courts have found that similar arbitration clauses satisfy the first prong of *Willie Gary*.  *Li*, 2013 WL 1286202, at *6 (collecting cases).  As to the second prong, the arbitration clause in the License Agreement references the rules of the Judicial Mediation and Arbitration Services ("JAMS") by stating that the Parties will be subject to "binding arbitration before an arbitrator from Judicial Mediation and Arbitration Services ("JAMS") . . . under the Optional Expedited Arbitration Procedures then in effect for JAMS."  License Agreement at 2.  This reference incorporates the JAMS rules into the arbitration clause.  JAMS rule 11(b), in particular states:

> Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator.  The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.

Dkt. 27-8 ("JAMS Comprehensive Arbitration Rules") at 4.  As this rule "empower[s] arbitrators to decide issues of substantive arbitrability," the second prong of *Willie Gary* is also satisfied.  *Riley v. Brocade Comm'ns Sys., Inc*., No. C.A. 9486-VCN, 2014 WL 1813285, at *3 (Del. Ch. 2014); *Li*, 2013 WL 1286202, at *6.  Here, the License Agreement's broad arbitration clause coupled with its reference to the JAMS rules clearly indicates that the Parties intended to submit the issue of arbitrability to an arbitrator under *Willie Gary*.

Accordingly, the Court finds that the Parties intended to delegate the threshold questions of arbitrability to the arbitrator.

////

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**D.  The Delegation Clause Is Not Unconscionable**

Plaintiffs' final argument against arbitration is that the License Agreement and its delegation clause are: (1) a contract of adhesion; (2) procedurally unconscionable; and (3) substantively unconscionable.  Opp. at 25.  The Court disagrees for the reasons set forth below.

"Because a court must enforce an agreement that, as here, clearly and unmistakably delegates arbitrability questions to the arbitrator, the only remaining question is whether the particular agreement to delegate arbitrability—the Delegation Provision—is itself unconscionable."  *Brennan v. Opus Bank*, 796 F.3d 1125, 1132 (9th Cir. 2016) (citing *Rent–A– Center, West, Inc. v. Jackson*, 561 U.S. 63, 74 (2010)).  Thus, enforcement of a delegation clause is  proper "in the absence of some other generally applicable contract defense, such as fraud, duress, or unconscionability."  *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1209 (9th Cir. 2016).  A party challenging arbitration must attack the delegation clause specifically rather than the contract as a whole.  *See Brennan*, 796 F.3d at 1133; *see Rent-A-Ctr.*, 561 U.S. at 71-74.

In evaluating whether a contract provision is unconscionable, a Court must consider two types of unconscionability — procedural and substantive.  *See OC Tint Shop, Inc. v. CPFilms, Inc.*, No. 17-1677-RGA, 2018 WL 4658211, at *3 (D. Del. 2018).  While "[p]rocedural unconscionability alleges defects in the process adopting the contract provision . . .  [s]ubstantive unconscionability has to do with the content of the contract provision."  *Id*. (citing *James v. Nat'l Fin., LLC*, 132 A.3d 799, 815 (Del. Ch. 2016) ("An agreement is substantively unconscionable if the terms evidence a gross imbalance that shocks the conscience.") (internal quotations omitted)).

A finding of unconscionability under Delaware law requires "an absence of meaningful choice and contract terms unreasonably favorable to one of the parties."  *Tulowitzki v. Atl. Richfield Co*., 396 A.2d 956, 960 (Del. 1978).  "Superior bargaining power alone without the element of unreasonableness does not permit a finding of unconscionability or unfairness."  *Id*.  Furthermore, "[a]n unsupported conclusory allegation . . . that a contract is unenforceable as unconscionable is not enough.  Sufficient facts surrounding the 'commercial setting, purpose and effect' of a contract at the time it was made should be alleged so that the court may form a judgment as to the existence of a valid claim of unconscionability . . . ."  *Id.* at 961 (quoting

*Patterson v. Walker-Thomas Furniture, Inc.*, 277 A.2d 111, 114 (D.C. 1971)).

### 1. Contract of Adhesion

Plaintiffs argue that the License Agreement is a contract of adhesion because it was "non-negotiable and presented . . . on a take-it-or-leave-it basis." Opp. at 24. In support of this assertion, Plaintiffs rely upon the California cases *Pinela v. Neiman Marcus Group, Inc.*, 238 Cal. App. 4th 227, 242 (Cal. Ct. App. 2015) and *Ajamian v. CantorCO2e, L.P.*, 203 Cal. App. 4th 771, 796 (Cal. Ct. App. 2012). Opp. at 24-25. In *Ajamin*, the court found that the contract in question "was an adhesion contract [] because it was based on a standardized form, drafted and imposed by a party of superior bargaining strength, and left [the plaintiff] with only the option of adhering to the contract or rejecting it (and losing her position and compensation as broker)." *Ajamian*, 203 Cal. App. 4th at 796. The instant situation is distinguishable from *Ajamian*, as Plaintiffs were not left with the options of either accepting the License Agreement as is or rejecting it altogether. *See supra* Section V.A. Rather, Plaintiffs were given the opportunity to opt out of the License Agreement's provisions. *Id.* Accordingly, the Court finds that the License Agreement was not a contract of adhesion because Plaintiffs had the opportunity to opt out of its provisions. *Id.* The Court proceeds to Plaintiffs' other arguments.

### 2. Procedural Unconscionability

Plaintiffs similarly argue that the License Agreement and its delegation clause are procedurally unconscionable because they were "non-negotiable and presented . . . on a take-it-or-leave-it basis." Opp. at 24-25. Plaintiffs again rely upon *Pinela* as support. *Id.* at 25. While Defendant admits the arbitration provision in the License Agreement is part of a standard form contract, it contends that the arbitration provision is not procedurally unconscionable because Plaintiffs had the opportunity to opt out and thus were not required to "take-it-or-leave-it." Motion at 15. Defendant notes that Plaintiffs were given the opportunity to review the License Agreement and its arbitration provision at two separate points during the process of downloading and installing the driver. *Id.* at 15-16; Reply at 9. Despite these opportunities to opt out, Plaintiffs chose to continue using the graphics cards and drivers without doing so. Motion at 16; Reply at 9.

The Court finds Plaintiffs' arguments unpersuasive. First, as instructed by *Rent-a-Center*,

United States District Court
Northern District of California

1    the Court only considers Plaintiffs' unconscionability arguments specifically related to the

2    delegation clause. *Rent-A-Center*, 561 U.S. at 71-74.  Though the delegation clause was part of a

3    standard contract, Plaintiffs were given two opportunities to review the delegation clause and its

4    opt out provisions.  Sinnathamby Decl. ¶¶ 6, 7. Further, Plaintiffs' had the choice to opt out of the

5    delegation clause by following the directions outlined in the License Agreement.  *Id.*  In sum,

6    Plaintiffs were not presented with the delegation clause on a "take-it-or-leave-it basis" because

7    they were plainly given the opportunity to opt out.  License Agreement at 3.  Furthermore, since

8    Court determined in Section V.B that Delaware law, not California law, controls the instant case,

9    *Pinela* is not persuasive.[2]  Accordingly, the Court does not find that the delegation clause was

10   procedurally unconscionable.  The Court turns next to the issue of substantive unconscionability.

### 3.   Substantive Unconscionability

12       Plaintiffs also contend that the delegation clause is substantively unconscionable because

13   "it provides that the arbitrator will determine a challenge to the enforceability of the agreement

14   brought by a consumer, but also prohibits the arbitrator from applying California (or any other

15   state law) unconscionability standards."  Opp. at 25.  In support, Plaintiffs again rely upon *Pinela*.

16   *Id.*  Defendants respond by arguing that the License Agreement does not restrict the arbitrator

17   from hearing choice-of-law arguments regarding what law to apply to the License Agreement as a

18   whole.  Motion at 12.  Defendants further argue that "Plaintiffs remain free to dispute the

19   enforceability of the [License] Agreement, including choice-of-law arguments, before the

20   arbitrator."  *Id.*  Defendants also argue that the delegation clause is not one that "shocks the

21   conscience" – rather, the delegation clause "contains provisions designed to make dispute

22   resolution accessible to consumers."  *Id.* at 16.  Defendants specifically point to the opt out

23   provisions and the option given to consumers to request an in-person hearing in his or her own

24   town rather than a JAMS office in Santa Clara County.  *Id.* at 16; License Agreement at 2.

25       The Court does not find that Plaintiffs have met their burden of showing that the delegation

---

[2] Defendants argue that *Pinela* is also inapplicable to the instant case because the delegation clause was mandatory and contained no opt-out provision.  Reply at 11 (citing *Pinela*, 238 Cal. App. 4th at 235, n.2.)

United States District Court
Northern District of California

clause "evidence[s] a gross imbalance that shocks the conscience." *OC Tint Shop, Inc. v. CPFilms, Inc.*, No. 17-1677-RGA, 2018 WL 4658211, at *3 (D. Del. 2018) (citing *James v. Nat'l Fin., LLC*, 132 A.3d 799, 815 (Del. Ch. 2016)). Rather, as Defendants have identified, the delegation clause gives Plaintiffs the option to request an arbitration hearing in their hometown, among other things. License Agreement at 2. The Court cannot find that the delegation clause is so harsh or one-sided to constitute substantive unconscionability.

Accordingly, the Court finds that the delegation clause is not unconscionable. Any objections regarding the unconscionability or scope of the License Agreement must be made to the arbitrator, not the court. *See Henry Schein*, 139 S.Ct. at 530.

**E. This Proceeding Should Be Dismissed**

In light of the Court's conclusion that Plaintiffs' claims are subject to arbitration, the only remaining question is whether the action should be stayed or dismissed. Defendant asserts that dismissal is warranted, and, in the alternative, requests a stay of proceedings pursuant to 9 U.S.C. § 3. Motion at 17. Plaintiffs do not oppose this request.

The Ninth Circuit has held that "a district court may either stay the action or dismiss it outright when . . . the court determines that all of the claims raised in the action are subject to arbitration." *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1073–74 (9th Cir. 2014) (citing *Sparling v. Hoffman Constr. Co.,* 864 F.2d 635, 638 (9th Cir. 1988)). Courts in this District have regularly dismissed cases upon finding that all of a plaintiff's claims were subject to arbitration. *See Campos v. JPMorgan Chase Bank, NA*, No. 18-cv-06169-JSC, 2019 WL 827634, at *12 (N.D. Cal. 2019) (collecting cases).

As the Court has found that all of Plaintiffs' claims must be arbitrated, no claims are left for the Court to resolve after arbitration is complete. *See supra* Section V.C. Accordingly, the Court concludes that dismissal of this action without prejudice is appropriate.

////

////

////

////

**VI.    CONCLUSION**

For the reasons set forth above, the Court **GRANTS** Defendant's motion to compel arbitration and **DISMISSES** this action without prejudice.  The Clerk of Court shall close the case.

**SO ORDERED.**

Dated: November 18, 2019

_____
SUSAN VAN KEULEN
United States Magistrate Judge